IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| CASEY R. OLIVER, *et al.*, <br>    *Plaintiffs*, <br><br> v. <br><br> ALFRED E. CRUMP, SR., *et al.*, <br>    *Defendants*. | Civil Action No. ELH-11-1925 |

**MEMORANDUM OPINION**

Plaintiffs, Casey Oliver and Ellen Knipp-Hughes, "for their own use and the use of all common shareholders of and for the use of Elkview Shores, Inc.," Complaint (ECF 3), filed suit against defendants Alfred E. Crump, Sr.; Alfred E. Crump, Jr.; and Irma G. Crump, alleging "Breach Of Duty Of Loyalty" (Count I), "Breach Of Fiduciary Duty" (Count II), "Civil Conspiracy" (Count III), and "Aiding And Abetting" (Count IV).[1]  Defendants have filed a Motion to Dismiss ("Motion") (ECF 6) under Rule 12(b)(2) of the Federal Rules of Civil Procedure, seeking dismissal of plaintiffs' Complaint based on a lack of personal jurisdiction. For the reasons that follow, I will deny their Motion.

**Background**[2]

Defendants are former officers, directors, and employees of Elkview Shores, Inc. ("Elkview"), a Maryland corporation that owns and operates a "family oriented summer

---

[1] Plaintiffs initially filed suit in the Circuit Court for Cecil County, Maryland. Defendants timely removed the case to this Court on the basis of diversity jurisdiction (ECF 2). The plaintiffs all are residents of Maryland, while the defendants all are residents of Delaware, and more than $75,000 is in controversy. *See* 28 U.S.C. §§ 1332(a) (diversity jurisdiction); 1441 (removal jurisdiction).

[2] I will assume the parties' familiarity with many of the underlying factual allegations.

waterfront campground" in Earleville, Maryland.  Complaint ¶ 2.  In particular, both Alfred Crump *père et fils* served as managers of Elkview from March 2005 through July 2009, and served on its board of directors.  *Id.* ¶¶ 4, 6.  Irma Crump also served on the board of directors, and was Secretary of Elkview.  *Id.* ¶ 5.  All three defendants were shareholders of the corporation.  *Id.* ¶¶ 4-6.

In June 2009, Elkview's board elected Oliver as its president, and hired Knipp-Hughes as Elkview's Office and Park Manager.  *Id.* ¶ 14.  In their Complaint, plaintiffs claim that, when they assumed their respective positions, they discovered that defendants had engaged in a course of misconduct in their roles as officers and employees of the corporation.  Specifically, plaintiffs allege that defendants "were improperly receiving compensation from Elkview Shores, double-billing Elkview Shores for the same services, and 'reimbursing' themselves for illegitimate expenditures."  *Id.* ¶ 15.  These expenditures allegedly involved sham purchases, made on Elkview's behalf, of propane gas, health insurance, and road repair and "erosion control" services from other companies owned by defendants.  *See id.* ¶¶ 16-17.  Plaintiffs also claim that Crump, Jr. and an individual named Michael Crump (who is not a party) made personal purchases using petty cash and a credit card belonging to Elkview.  *Id.* ¶ 18.  Moreover, plaintiffs allege that, during defendants' tenure on Elkview's board, defendants improperly held meetings of the board of directors without notice to Oliver, who was also a board member, and that, at these meetings, they increased Crump, Jr.'s salary; issued new shares paying quarterly dividends to Crump, Jr.; and purported to modify Elkview's bylaws pertaining to voting requirements, the number of directors, and the calculation of dividends.  *Id.* ¶¶ 9-13.

In their Motion, defendants contend that this Court lacks personal jurisdiction over them, because all three defendants are residents of Delaware and, as they see it, plaintiffs' Complaint "is devoid of any allegations of conduct occurring in Maryland." Their motion is supported by an affidavit of Crump, Sr. (ECF 6-2), who claims, in sum, that defendants have no connection to Maryland, other than their former positions as officers, board members, and employees of Elkview. Defendants rely on case law iterating that "a corporate officer is not subject to this Court's jurisdiction simply by virtue of his or her corporation's activities in Maryland." *AGV Sports Gp., Inc. v. Protus IP Solutions, Inc.*, Civ. No. RDB-08-3388, 2009 WL 1921152, at *7 (D. Md. July 1, 2009); *see also Glynn v. EDO Corp.*, 536 F. Supp. 2d 595, 604 (D. Md. 2008) ("[S]imply because Caprario and Puzzo worked for IST does not make them subject to jurisdiction wherever IST might be sued."); *Harte-Hanks Direct Mkt. v. Varilease Tech.*, 299 F. Supp. 2d 505, 513 (D. Md. 2004) ("Personal jurisdiction over an individual officer, director, or employee of a corporation does not automatically flow from personal jurisdiction over the corporation."); *Birrane v. Master Collectors, Inc.*, 738 F. Supp. 167, 169 (D. Md. 1990) (finding "no basis whatsoever for holding that merely because a corporation transacts business in the state . . . or has other substantial contacts with the state, an individual who is its principal should be deemed to have engaged in those activities personally"); *Quinn v. Bowmar Publ'g Co.*, 445 F.Supp. 780, 785 (D. Md. 1978) (stating that a court cannot obtain jurisdiction over individual officers or employees based "upon jurisdiction over the corporation").

Plaintiffs acknowledge the validity of the general principle enunciated in the foregoing cases, but argue that it is not applicable here, because "the Defendants are not being sued for their actions done in the course of their respective duties but rather for the very breach of those

duties." According to plaintiffs, defendants' various acts of misconduct or malfeasance in their roles as corporate officers amount to persistent contacts and activities within Maryland that support personal jurisdiction.[3]

**Discussion**

When personal jurisdiction is challenged by a Rule 12(b)(2) motion, "the jurisdictional question thus raised is one for the judge, with the burden on the plaintiff ultimately to prove the existence of a ground for jurisdiction by a preponderance of the evidence." *Combs v. Bakker*, 886 F.2d 673, 676 (4th Cir. 1989). Discovery and an evidentiary hearing are not required to resolve the motion, however. *See generally* 5B WRIGHT & MILLER, FEDERAL PRACTICE & PROCEDURE § 1351, at 274-313 (3d ed. 2004, 2010 Supp.). Rather, the district court may address the question of personal jurisdiction as a preliminary matter, ruling solely on the basis of motion papers, supporting legal memoranda, affidavits, and the allegations in the complaint. *Consulting Engineers Corp. v. Geometric Ltd.*, 561 F.3d 273, 276 (4th Cir. 2009). Ordinarily, when considering a motion in that posture, "the court must take all disputed facts and reasonable inferences in favor of the plaintiff." *Carefirst of Maryland, Inc. v. Carefirst Pregnancy Centers, Inc.*, 334 F.3d 390, 396 (4th Cir. 2003).

Although the parties clearly dispute many facts concerning this case, their disputes are not relevant to resolution of the Motion. Disposition of defendants' Motion turns largely on a question of law.

---

[3] Plaintiffs have also submitted an affidavit of Knipp-Hughes (ECF 10-2), who attests to various specific acts of defendants in Maryland. Defendants challenge Knipp-Hughes' competency to testify from personal knowledge regarding the contents of her affidavit. I need not resolve the dispute regarding Knipp-Hughes' affidavit, however, in view of the conclusion I reach on other grounds.

Rule 4(k)(1) of the Federal Rules of Civil Procedure authorizes a federal district court to exercise personal jurisdiction over a defendant in accordance with the law of the state where the district court is located. *Carefirst*, 334 F.3d at 396. Therefore, "to assert personal jurisdiction over a nonresident defendant, two conditions must be satisfied: (1) the exercise of jurisdiction must be authorized under the state's long-arm statute; and (2) the exercise of jurisdiction must comport with the due process requirements of the Fourteenth Amendment." *Id.*

Maryland's long-arm statute is codified at Md. Code (2006 Repl. Vol., 2010 Supp.), § 6-103(b) of the Courts & Judicial Proceedings Article ("C.J."). It authorizes, *inter alia*, "personal jurisdiction over a person, who directly or by an agent . . . [t]ransacts any business or performs any character of work or service in the State." Maryland's courts have "consistently held that the purview of [Maryland's] long arm statute is coextensive with the limits of personal jurisdiction set by the due process clause of the Federal Constitution." *Beyond Systems, Inc. v. Realtime Gaming Holding Co.*, 388 Md. 1, 15, 878 A.2d 567, 576 (2005) (citing *Mohamed v. Michael*, 279 Md. 653, 657, 370 A.2d 551, 553 (1977)). "Because the limits of Maryland's statutory authorization for the exercise of personal jurisdiction are coterminous with the limits of the Due Process Clause, the statutory inquiry necessarily merges with the constitutional inquiry, and the two inquiries essentially become one." *Stover v. O'Connell Assocs., Inc.*, 84 F.3d 132, 135-36 (4th Cir. 1996). Thus, the question here is whether the exercise of personal jurisdiction over defendants offends the due process guarantee of the Fourteenth Amendment.

Personal jurisdiction over a non-resident defendant comports with due process so long as the defendant has "minimum contacts with [the forum state] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *International Shoe Co.*

*v. Washington*, 326 U.S. 310, 316 (1945).  Courts have separated this test into individual "prongs," first ascertaining whether the threshold of "minimum contacts" is met, and then considering whether the exercise of jurisdiction on the basis of those contacts is "constitutionally reasonable."  *Consulting Engineers*, *supra*, 561 F.3d at 278-79.

The "minimum contacts" test is met where the defendant has "purposefully avail[ed] himself of the privilege of conducting business under the laws of the forum state."  *Id.* at 278.  A determination that the defendant has established minimum contacts with the forum state amounts to a conclusion that "'it is presumptively not unreasonable to require him to submit to the burdens of litigation in that forum as well.'"  *Id.* (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476 (1985)).

Generally, the court must consider the prong of constitutional reasonableness "[i]f, and only if" the minimum contacts test is met.  *Consulting Engineers*, 561 F.3d at 278.  The constitutional reasonableness inquiry permits a defendant "who purposefully has directed his activities at forum residents" to defeat jurisdiction, if he can "present a compelling case that the presence of some other considerations would render jurisdiction unconstitutional."  *Burger King*, 471 U.S. at 477.

As I see it, resolution of defendants' Motion is controlled by *Pittsburgh Terminal Corp. v. Mid Allegheny Corp.*, 831 F.2d 522 (4th Cir. 1987), a case that strongly supports plaintiffs' position, although it is not cited by either party.  In *Pittsburgh Terminal*, the Fourth Circuit applied the minimum contacts analysis, described above, in the context of a shareholder derivative suit, filed in federal court in West Virginia, against a West Virginia corporation and two of its directors, Hawk and Griffith, who resided in Virginia.  *Id.* at 524.  The directors

successfully moved to dismiss for lack of personal jurisdiction, but the Fourth Circuit reversed. *Id.* It held that, ordinarily, "the acceptance of a directorship constitutes minimum contacts in a derivative suit." *Id.* at 527.

The Court noted that "West Virginia law in general commits the affairs of a corporation to its board of directors," and quoted the relevant state statute: "'The business and affairs of a corporation shall be managed by a board of directors except as may be otherwise provided in the articles of incorporation.'" *Id.* at 527 (quoting W. Va. Code § 31-1-95, as then codified).[4] The Court observed that Hawk and Griffith had participated personally in the business decisions at issue in the lawsuit, and that those decisions had their primary effects in the forum state, which was the exclusive location where the corporation did business. *Id.* at 527-28. In the Court's view, "the acts of Hawk and Griffith amounted to 'transacting any business' under the West Virginia long-arm statute.'" *Id.* at 528.[5] It explained, *id.* at 528-29 (internal footnotes omitted):

> Excellent reasons exist for allowing a State to assert jurisdiction over non-resident directors of domestic corporations. A chartering State has a strong, even compelling, interest in providing a forum for redressing harm done by corporate fiduciaries, harm endured principally by a resident of that State, the corporation. . . . Given the high degree of regulation over corporate fiduciaries, the State's interest in providing a convenient forum for a derivative suit charging misfeasance or nonfeasance of a director cannot be overemphasized.
> \* \* \*

---

[4] Maryland law is substantially the same: "The business and affairs of a corporation shall be managed under the direction of a board of directors." Md. Code (2007 Repl. Vol., 2010 Supp.), § 2-401(a) of the Corporations & Associations Article.

[5] As discussed, Maryland's long-arm statute, C.J. § 6-103(b), likewise authorizes the exercise of personal jurisdiction over a person who "[t]ransacts any business" in the State. The *Pittsburgh Terminal* Court discussed at length, and expressly distinguished, the Supreme Court's decision in *Shaffer v. Heitner*, 433 U.S. 186 (1977), a shareholder derivative action in which the Court held unconstitutional a Delaware statute permitting *in rem* jurisdiction over out-of-state shareholders solely on the basis of their ownership of property (*i.e.*, the stock of a Delaware corporation) in the forum state. *See Pittsburgh Terminal*, 831 F.2d at 526-27.

> An assertion of jurisdiction such as this one should not come as any surprise. . . .  Certainly, a director of a corporation has created a continuing obligation between himself and the corporation, one which inures significantly to the director's benefit, not to mention that of the corporation.  Directors reap the advantages and protections available to them under state law, and it is not unfair to require them to answer for any alleged breaches of trust as a director in the forum that has bestowed those protections.  No one forced or tricked the defendants into assuming their positions, and it seems clear that Hawk and Griffith have purposefully availed themselves of the privilege of doing business as directors under West Virginia's laws.

Turning to the constitutional reasonableness prong of the due process inquiry, the *Pittsburgh Terminal* Court opined that, "if anything, these factors make the assertion of jurisdiction more reasonable." *Id.* at 529.  It noted that "the burden on the defendants of litigating in West Virginia is *de minimis*," because they lived in neighboring Virginia (similarly, defendants in this case reside in neighboring Delaware). *Id.*  The Court also reiterated that "West Virginia has a strong interest in providing a forum for a claim such as this, where the directors of one of its domestic corporations are alleged to have committed wrongful acts in the execution of their duties as corporate directors and to the detriment of the corporation." *Id.* at 529-30.

The *Pittsburgh Terminal* Court concluded with words equally applicable here, *id.* at 530:

> The end point in any due process analysis of jurisdictional contacts is one of fundamental fairness: are the defendants' contacts with the forum state significant enough that assertion of jurisdiction over the defendant comports with traditional notions of fair play and substantial justice? We hold that, by accepting and exercising directorships of this West Virginia corporation, whose place of business is in West Virginia, and, by their various acts with respect to this transaction, the defendants established sufficient contacts so that they should have reasonably expected to be sued in West Virginia's courts to defend any actions regarding their conduct as directors.  This is not a random or fortuitous exercise of jurisdiction, and we have no problem in holding that, by accepting and exercising directorships with Mid Allegheny, the defendants purposefully invoked the benefits and protections of West Virginia law. . . .  Directors and officers derive many benefits from the legal fiction of the corporation.  It does not seem unfair to require them in turn to shoulder one of the few burdens of such a fiction.  The defendants had full knowledge that Mid Allegheny was a West Virginia

corporation when they accepted and exercised directorships. And, accepting a directorship is not a frivolous business. The law imposes substantial responsibilities, and substantial liability, upon corporate directors. Therefore, it seems perfectly reasonable to require defendants Hawk and Griffith to defend this action, concerning their conduct as directors, in a West Virginia court.

*Pittsburgh Terminal* is the law of this circuit. In my view, it compels the conclusion that a court in Maryland may exercise personal jurisdiction over out-of-state directors of a Maryland corporation that conducts its business operations in Maryland, in a suit alleging breach of the defendants' fiduciary obligations as directors of the corporation. As in *Pittsburgh Terminal*, defendants have advanced no reasons that could suffice to render this Court's exercise of personal jurisdiction over them constitutionally unreasonable.

Accordingly, defendants' Motion to Dismiss (ECF 6) will be denied. An Order implementing this ruling follows.

Date: September 15, 2011                                /s/
                                                        Ellen Lipton Hollander
                                                        United States District Judge